**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-03119-NYW

L.R.E.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying Plaintiff L.R.E.'s ("Plaintiff") application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court respectfully **AFFIRMS** the Commissioner's decision.

### BACKGROUND

**I.    Factual Background**

Plaintiff was injured at work in August 2019 in a motor vehicle accident. [Doc. 10-5 at 231; Doc. 10-7 at 388–94].[2] He fractured a vertebra, several ribs, and his left clavicle.

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using his initials only.

[2] When citing to the Administrative Record, the Court cites to the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, which is found in the bottom right-hand corner of each page. For all other documents, the Court cites to the docket and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

[Doc. 10-7 at 388–94]. He also suffered injuries to his lungs, left knee, and left shoulder. *See* [*id.* at 388–94, 1258]. Plaintiff's lungs, vertebra, clavicle, and ribs healed as expected. *See* [*id.* at 501–02, 533, 536, 538, 545]. He underwent surgery on his left knee, and the limitations on his knee are not at issue in this case. *See, e.g.*, [*id.* at 419–20]. *See generally* [Doc. 11].

After the accident, Plaintiff experienced ongoing pain in his left shoulder. [Doc. 10-7 at 474]. In February 2020, he underwent arthroscopic surgery to address the damage to his labrum and rotator cuff. [*Id.* at 447–48]. Physical therapy after the surgery continued to reduce his pain and improve his strength and range of motion. [*Id.* at 432, 435, 437]. In summer 2020, Plaintiff returned to limited work and reported helping with household chores, though he still struggled with overhead motion. [*Id.* at 414–21]. A September 2021 MRI of Plaintiff's left shoulder revealed tears to the labrum. [*Id.* at 1073]. The treating physician concluded that the changes to Plaintiff's labrum were post-surgical, Plaintiff's shoulder appeared as "expected" post-surgery, and no further surgical intervention was necessary. [*Id.* at 1033–34].

Plaintiff also experienced headaches in the wake of the accident. [Doc. 10-11 at 1740]. In April 2022, he reported that he suffered from headaches every day. [*Id.*]. He also stated that he received occipital nerve blocks that relieved 90–95% of his headaches. [*Id.*]. In July and November 2022, Plaintiff described his headaches as "constant." [Doc. 10-13 at 2089, 2102, 2125–26]. In November 2022, Plaintiff reported that the nerve blocks provided him with 50% relief for at least four months. [*Id.* at 2126]. Plaintiff testified in April 2023 that his "head hurts 24 hours" a day and, although the nerve blocks alleviate his pain, he had been waiting over a month for an appointment. [Doc. 10-2 at 55, 63–64].

## II.     Procedural Background

On March 18, 2021, Plaintiff applied for DIB. [Doc. 10-5 at 228–30]. His application was denied both initially and on reconsideration. [Doc. 10-4 at 89–94, 105–08]. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). [*Id.* at 115–16]; *see also* [Doc. 10-2 at 49–69]. The ALJ concluded that Plaintiff did not meet the definition for "disabled" under the Act and denied his DIB application. *See generally* [Doc. 10-2 at 29–48]. The Social Security Administration's Appeals Council denied Plaintiff's request for review, [*id.* at 1–8], and the Parties do not dispute that Plaintiff exhausted his administrative remedies prior to seeking review in this Court, *see* [Doc. 11 at 1; Doc. 12 at 3].

## LEGAL STANDARD

An individual is eligible for DIB under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and is disabled as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that he was disabled prior to his date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

An individual is disabled for purposes of the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. When a claimant has one or more

3

physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 423(d)(2)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4). These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515

F.3d at 1070 (quotation omitted); *see also Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

Plaintiff argues that the ALJ erred in considering his shoulder injury and headaches when she formulated Plaintiff's RFC at step four. *See generally* [Doc. 11]. The ALJ found that Plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) with the following limitations: the claimant can sit for six hours and stand and/or walk four hours in an eight-hour workday. He must avoid climbing ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, kneel, crouch, and crawl; and can frequently stoop. He can walk no more than 30 min at one time, after which he requires a brief period of one to two minutes of sitting before walking again. *He can occasionally reach overhead on the left*. He can understand, remember, and carry out simple instructions that can be learned in 30 days or less; and can sustain concentration, persistence, and pace to these simple instructions for two-hour intervals with normal breaks. He must avoid working at unprotected heights or with moving machinery, including no commercial driving.

[Doc. 10-2 at 34 (emphasis added)]. The Court addresses Plaintiff's arguments in turn.

### I.   Shoulder Injury

Plaintiff argues that the ALJ erred by finding an opinion by Dr. J. Tashoff Bernton to be persuasive but failing to fully incorporate Dr. Bernton's opinion into the RFC. [Doc. 11 at 3–12]. Dr. Bernton concluded in relevant part that Plaintiff "should not be performing . . . repetitive work over shoulder level." [Doc. 10-11 at 1648]. Plaintiff

5

contends the ALJ's finding that Plaintiff can "occasionally reach overhead on the left" conflicts with Dr. Bernton's opinion. [Doc. 11 at 3–6, 11].

Plaintiff fails to explain how the difference between "occasional" and "not repetitive" is anything more than semantic. Plaintiff argues that the jobs found suitable by the ALJ reveal that he would somehow be expected to reach overhead occasionally but repetitively. But the job descriptions Plaintiff identifies do not indicate that overhead reaching would be required at all, much less repetitively. For example, the Department of Labor's description for jobs like "jewelry preparer"—a job the ALJ found suitable for Plaintiff, [Doc. 10-2 at 43]—characterizes the job as requiring "repetitious, uncomplicated work," *see Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Emp. & Training Admin., U.S. Dep't of Labor §§ 6.04, 6.04.24 (1993). Similarly, working as a "touch-up screener" would require Plaintiff to "[c]oncentrat[e] on doing the same work repeatedly." *Id.* at §§ 6.03, 6.03.02; *see also* [Doc. 10-2 at 43]. Although those jobs might require repetitive work, Plaintiff provides no support for his assumption that they would require repetitive overhead reaching and run afoul of Dr. Bernton's opinion. Nor does he point to any other evidence suggesting that the terms "occasional" and "not repetitive" are not consistent with each other.

Plaintiff also argues that because Dr. Bernton did not specify that Plaintiff should be limited to reaching with his left arm, Dr. Bernton's opinion should be read as restricting Plaintiff from any overhead reaching. [Doc. 11 at 6–9]. Defendant counters that Dr. Bernton's analysis only contemplates restrictions on Plaintiff's left shoulder, and there is substantial evidence in the record supporting the ALJ's decision to limit Plaintiff's overhead reaching to his left shoulder. [Doc. 12 at 11–13].

6

The Court respectfully agrees with Defendant that, under substantial evidence review, the ALJ properly focused on the limitations to Plaintiff's left shoulder. Plaintiff's medical records make clear that his struggles with overhead tasks stemmed from his left shoulder pain. [Doc. 10-2 at 37 (citing [Doc. 10-7 at 421–22 (detailing Plaintiff's limitations on overhead reaching and listing diagnosis as "[a]cute pain of left shoulder")])]. The ALJ's RFC is also consistent with the findings of two state Disability Determination Service physicians who concluded that Plaintiff's left shoulder permits him to "occasionally" perform overhead tasks. *See* [*id.* at 39–40; Doc. 10-3 at 73–74, 80–82]. Dr. Bernton notes that Plaintiff complained of "left shoulder plain" without mentioning Plaintiff's right shoulder. [*Id.* at 1643]. Dr. Bernton then assigns an "impairment rating of the *shoulder*," [*id.* at 1646–47], plainly referring to the singular left shoulder rather than both shoulders. And although Dr. Bernton acknowledges that Plaintiff experienced "persistent pain" and "rigidity" in his thoracic spine, Dr. Bernton does not opine that Plaintiff's spinal pain—or any other condition—affected his ability to reach overhead with his right arm. [Doc. 10-11 at 1647–48]. There is simply no evidence that Dr. Bernton evaluated Plaintiff as having injured his right shoulder or experienced pain or a limited range of motion when reaching overhead with his right shoulder.

Based on this evidence, the Court concludes that the ALJ reasonably limited Plaintiff's overhead reaching on his left side while accounting for Plaintiff's chronic pain elsewhere in the RFC.[3] [Doc. 10-2 at 37–38]. Plaintiff might prefer a different, more

---

[3] Plaintiff also faults the ALJ for failing to consider at step two whether his spinal pain or other injuries were "severe." [Doc. 11 at 8–9]. But as Defendant points out, step two requires only a finding that *any* impairment is severe in order to continue to step three. 20 C.F.R. § 404.1520(a)(4)(ii); *see also* [Doc. 12 at 12–13]. "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at

7

technical reading of Dr. Bernton's opinion than the one used by the ALJ. But given that the ALJ's RFC is generally consistent with Dr. Bernton's opinion and supported by substantial evidence in the record, the Court's analysis goes no further. *Jeri A. C. v. Kijazaki*, No. 21-cv-1233-JWL, 2022 WL 3868150, at *5 (D. Kan. Aug. 30, 2022) (holding that, under substantial evidence review, the court does not search for the "best" understanding of a doctor's opinion and instead "determine[s] whether the ALJ's understanding is supported by the evidence"); *cf. Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (recognizing that a lack of analysis in an ALJ's RFC determination is "troubling" but not fatal when the determination is supported by substantial evidence). In light of that finding, Plaintiff's arguments about the suitability of available jobs to which the Vocational Expert testified, *see* [Doc. 11 at 5–7], and the purported conflicts with the opinions of Drs. Snyder and Barrett, are equally unavailing, [*id.* at 12]. The Court finds no reversible error in the ALJ's RFC analysis of Plaintiff's shoulder injury.

## II.     Headaches

Plaintiff next argues that the ALJ failed to adequately account for his headaches at steps three and four of the analysis. [Doc. 11 at 12–18].

With respect to step three, Plaintiff argues that the ALJ should have considered whether his headaches were equivalent to the listed impairment of epilepsy. [*Id.*at 17–18]. To consider whether a "primary headache disorder" is equivalent to the listing for epileptic seizures, the Social Security Administration considers "[a] detailed description

---

least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found that several of Plaintiff's conditions are severe—including his headaches and his shoulder and knee injuries—so the Court finds no reversible error at step two.

8

from an [acceptable medical source] of a typical headache event, including all associated phenomena"; "the frequency of headache events"; and

> limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019). At step three, however, the burden remains on Plaintiff to "present evidence establishing [his] impairments meet or equal listed impairments." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citation omitted). Even if the ALJ fails to address every possible relevant listing, "findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Id.*; *see also* SSR 17-2p, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017) ("If an adjudicator . . . believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.").

Plaintiff faults the ALJ for failing to address SSR 19-4p and the epilepsy listing but provides no evidence demonstrating that his headaches are medically equivalent to the listing for epileptic seizures. Although Plaintiff's headaches appear to be painful and ongoing, his medical records show he denied experiencing "aura, phonophobia, photophobia, nausea or vomiting"—the types of associated phenomena that might have elevated his headaches to a severity equal to epileptic seizures. [Doc. 10-11 at 1740];

9

*see also* SSR 19-4p, 2019 WL 4169635, at *7; 20 C.F.R. § 404 app. 1 §§ 11.00H1b, 11.02B (describing dyscognitive seizures, the type of seizure relevant to SSR 19-4p, as "characterized by alteration of consciousness"). Nor does the record evidence indicate that Plaintiff's headaches caused limitations in functioning that might render a headache disorder equal to epileptic seizures. *See, e.g.*, [Doc. 10-11 at 1740–41 (noting that Plaintiff suffered from sleep problems due to back and neck pain, not headaches, and that he improved his sleep quality with Butrans patches)]. Plaintiff testified that after 20 to 30 minutes of activity, he needs to rest for two to three hours, but the ALJ found this testimony inconsistent with the medical evidence and the work limitations identified by various physicians. [Doc. 10-2 at 39]. Plaintiff has identified no evidence sufficient to carry his burden to show that his headaches are equivalent to epileptic seizures. And because the ALJ's findings at other stages of the analysis are supported by substantial evidence and sufficient to establish that Plaintiff's headaches are not equal to a listed condition, the Court finds no reversible error at step three. *See Aslan v. Colvin*, 637 F. App'x 509, 510 (10th Cir. 2016) (finding no error at step three when claimant failed to identify any evidence confirming that he suffered from a listed condition).

Plaintiff's step four arguments fail for similar reasons. Plaintiff argues that the ALJ failed to comply with SSR 96-8p because she did not "indicate which limitations [in the RFC] were caused by headaches." [Doc. 11 at 13–14 (citing SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996))]. But SSR 96-8p requires only, among other things, "a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work." 1996 WL 374184, at *7. Here, the ALJ explained the effects of Plaintiff's headaches in conjunction with his other chronic pain conditions. *See* [Doc. 10-2 at 35,

10

38]. She then concluded that based on "the combination of all of the impairments, including chronic pain, the claimant should not lift more than 10 pounds occasionally, he must avoid climbing ladders, ropes, or scaffolds; and he can only occasionally climb ramps and stairs, kneel, crouch, and crawl." [*Id.* at 38].

The Court finds no reversible error in the ALJ's decision not to clarify which limitations, if any, were addressed to Plaintiff's headaches. To be sure, it might have been useful for the ALJ to assign particular limitations to each of Plaintiff's chronic pain conditions, including headaches. Under substantial evidence review, however, the Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Mustrick v. Astrue*, No. 12-cv-02006-JWL, 2013 WL 441064, at *9 (D. Kan. Feb. 5, 2013) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). And the Court readily discerns the reason for the ALJ's decision not to assign any limitations to headaches alone—as explained above, there is no evidence that Plaintiff's headaches caused him any functional limitations. *See Lax*, 489 F.3d at 1084 (explaining that step four inquiry is whether claimant's "impairment or combination of impairments prevents him from performing his past work" (quotation omitted)). Plaintiff emphasizes that one physician gave Plaintiff a 10% "impairment rating" for his headaches, [Doc. 11 at 15], but the same physician ultimately concluded that "[n]o specific work restrictions are necessary," [Doc. 10-13 at 2103–04]. The ALJ disregarded this opinion because it conflicted with other physicians' conclusions that Plaintiff required at least some restrictions. [Doc. 10-2 at 40–41]. None of the physicians recommending restrictions found that Plaintiff's headaches limited his ability to work. *See* [*id.* at 39–40]. The only possibly contradictory piece of evidence identified by Plaintiff is that sometimes

11

the nerve block injections gave him only 50% relief from his headaches, instead of 90–95% relief. [Doc. 11 at 15 (citing [Doc. 10-13 at 2125])]. But this neither demonstrates that Plaintiff's headaches caused a loss of function nor overwhelms the ALJ's reliance on other evidence. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) ("[E]vidence is not substantial if it is overwhelmed by other evidence in the record." (quotation omitted)).

Upon review of the record, the Court concludes that substantial evidence supports the ALJ's decision not to assign any particular restrictions in Plaintiff's RFC to his headaches. Accordingly, the Court **AFFIRMS** the ALJ's decision.

## CONCLUSION

The decision of the Commissioner is respectfully **AFFIRMED**.

DATED: March 19, 2025                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge